**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **JEFFREY A. ROWE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CAUSE NO.  3:05-CV-114 AS** |
| **v.** | ) | |
| | ) | |
| **CECIL DAVIS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

*OPINION AND ORDER*

Jeffrey A. Rowe, a *pro se* prisoner, filed complaint, a motion to amend his complaint, and a motion for default.

I.

Mr. Rowe asserts that the defendants have not appeared and answered in the time allotted since the complaint was served on them. It is clear that Mr. Rowe does not realize that neither the complaint nor an amended complaint have been served on any of the defendants. Until the defendants are served, they have no obligation to respond to the complaint. Therefore the motion will be denied.

II.

Mr. Rowe filed a motion to amend is complaint. FED. R. CIV. P. 15(a) provides that a party may amend once as a matter of course at any time before the complaint is served. Because the complaint has not yet been served, it was unnecessary to file a motion to amend. Nevertheless, Mr. Rowe has not filed an

amended complaint, therefore the motion to amend could not be granted and the court must proceed solely on the complaint that he has filed (docket # 5).

Additionally, the description of the amendments which he would like to make to his complaint are largely unnecessary. Mr. Rowe asserts that he wishes to amend his complaint to include similar subsequent events related to the confiscation of religious literature and the reasons why they were confiscated. The current complaint already contains an injunctive relief claim related to the confiscation of his religious literature and it is unnecessary to amend this complaint to include subsequently confiscated documents because additional past incidents are unnecessary to any prospective injunctive relief which he might obtain. Furthermore, it is unnecessary for Mr. Rowe to address in his complaint any additional reasons why he believes the literature is being confiscated because these questions will be properly raised during the course of this litigation when the defendants explain why they confiscated these materials.

Finally, Mr. Rowe seeks to withdraw his jury demand. It is unnecessary to amend his complaint to do this. FED. R. CIV. P. 38(d) permits a jury demand to be withdrawn with the consent of the parties. Because the complaint has not yet been served, Mr. Rowe is the only party to this case and he may withdraw his jury demand. Because the only necessary alteration to the complaint that the motion to amend attempts to make is withdrawing the jury demand, the court will

construe the motion to amend as a motion to withdraw jury demand. The motion to withdraw jury demand will be granted.

III.

Before the complaint can be served, it must first be screened pursuant to 28 U.S.C. § 1915A. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. The court will apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Colley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>    In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

IV.

Mr. Rowe alleges that, in various ways, he is being denied the right to practice his religion. The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>> (1) is in furtherance of a compelling governmental interest; and
>> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The statute does not define substantial burden, but in a case interpreting the land use provisions of RLUIPA, the Seventh Circuit has stated that

> a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). The statute defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Nevertheless, a substantial burden may be justified if it is the least restrictive means of furthering a compelling governmental interest.

4

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.
>
> . . .
>
> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Cutter v. Wilkinson*, ___ U.S. ___, ___; 125 S. Ct. 2113, ____ (2005).

## V.

In his first claim, Mr. Rowe alleges that the Indiana Department of Correction is placing substantial, unnecessary burdens on the practice of his religion. Though injunctive relief may be obtained from a person in his official capacity under the doctrine of *Ex Parte Young* (*Holton v. Ind. Horse Racing Comm'n*, 398 F.3d 928, 929 (7th Cir. 2005), the Eleventh Amendment prohibits suits against States and their agencies. *Kashani v. Purdue University*, 813 F.2d. 843, 845 (7th Cir. 1987). Therefore this claim and the Indiana Department of Correction, an agency of the State of Indiana, must be dismissed.

## VI.

In his second claim, Mr. Rowe alleges that Sgt. Tina Hill placed a substantial, unnecessary burden on the practice of his religion when she confiscated "letters containing spiritual advice, letters containing Theocratic opinions, published Identity Christian sermons/books, [and] a minister's license."

Complaint at 4, docket # 5. Reading religious literature may not be compelled by or central to Mr. Rowe's system of religious belief, but he alleges that it is a part of his exercise of religion. That is to say that reading religious literature is a part of the way Mr. Rowe practices and expresses his religious beliefs. Therefore, reading religious literature is a religious exercise. Taking his religious literature was directly, primarily, and fundamentally responsible for rendering that religious exercise effectively impracticable. Therefore taking his religious literature was a substantial burden on his religious exercise of reading religious literature.

Mr. Rowe appears to concede that prohibiting gang related literature or literature which supports or encourages a disturbance in the prison is the least restrictive means of achieving a compelling governmental interest. Nevertheless he argues that the confiscated literature in question does not qualify and therefore cannot be prohibited for either of those reasons. Mr. Rowe seeks an injunction ordering the delivery of his literature and he will be permitted to proceed against Sgt. Tina Hill in her official capacity for injunctive relief on his RLUIPA claim that she confiscated his religious literature.

VII.

In his third claim, Mr. Rowe alleges that he was denied due process because Cecil Davis does not have the authority to review a grievance appeal. Neither the due process requirements of the Constitution nor *Wolff v. McDonnell*, 418 U.S. 539

(1974) require the opportunity to appeal the determination of a grievance committee. Therefore this claim will be dismissed.

## VIII.

In his fourth claim, Mr. Rowe alleges that being denied his Constitutional rights and being prevented from effectively grieving those denials is cruel and unusual punishment. The Constitution does not require that a prison or jail provide a grievance procedure or that government employees respond to grievances. *Jones v. Brown*, 300 F. Supp. 2nd 674, 679 (N.D. Ind. 2003) ("[T]he First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance.") Additionally, though Mr. Rowe may have an individual cause of action for the denial of a specific federal or Constitutional right identified elsewhere in his complaint, such a denial does not itself constitute an additional claim of cruel and unusual punishment. Therefore this claim will be dismissed.

## IX.

In his fifth claim, Mr. Rowe alleges that Cecil Davis, Doris Woodruff-Filbey, and Evelyn Ridley-Turner violated Indiana Department of Correction policy when they refused to stop Sgt. Tina Hill's RLUIPA violation. The violation of an IDOC policy does not state a claim under § 1983. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Furthermore, "the doctrine of respondeat superior can not be

used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations and quotation marks omitted). Therefore this claim will be dismissed.

X.

In his sixth claim, Mr. Rowe alleges that Cecil Davis placed a substantial, unnecessary burden on the practice of his religion when he denied, "him the right to receive visits from his spiritual advisor (e.g. Rev. Railton Loy)." Complaint at 5, docket # 5. Meeting with a religious leader of his own faith may not be compelled by or central to Mr. Rowe's system of religious belief, but he alleges that it is a part of his exercise of religion. That is to say that meeting with a religious leader of his own faith is a part of the way Mr. Rowe practices and expresses his religious beliefs. Therefore, meeting with a religious leader of his own faith is a religious exercise. Preventing him from meeting with Rev. Loy was directly, primarily, and fundamentally responsible for rendering that religious exercise effectively impracticable. Therefore preventing him from meeting with Rev. Loy was a substantial burden on his religious exercise of meeting with a religious leader of his own faith.

Mr. Rowe argues that other non-family members with prior criminal histories are permitted to visit prisoners and lead religious services thereby disputing that preventing visitation by non-family members with a criminal

history is a compelling governmental interest and that prohibiting Rev. Loy is the least restrictive means of achieving whatever compelling governmental interest might exist. Mr. Rowe seeks an injunction ordering that Rev. Railton Loy be permitted to visit him and he will be permitted to proceed against Cecil Davis in his official capacity for injunctive relief on his RLUIPA claim that he denied him visitation with Rev. Loy.

XI.

In his seventh claim, Mr. Rowe alleges that Doris Woodruff-Filbey placed a substantial, unnecessary burden on the practice of his religion when she refused to allow him to have a Celtic Cross necklace. Wearing a religious symbol may not be compelled by or central to Mr. Rowe's system of religious belief, but he alleges that it is a part of his exercise of religion. That is to say that wearing a religious symbol is a part of the way Mr. Rowe practices and expresses his religious beliefs. Therefore, wearing a Celtic Cross necklace is a religious exercise. Denying him a Celtic Cross necklace was directly, primarily, and fundamentally responsible for rendering that religious exercise effectively impracticable. Therefore denying him a Celtic Cross necklace was a substantial burden on his religious exercise of wearing a religious symbol.

Mr. Rowe argues that Wiccans and Satanists are permitted to have Celtic Crosses thereby disputing that prohibiting them is a compelling governmental interest and that prohibiting him from having one is the least restrictive means

of achieving whatever compelling governmental interest might exist. Mr. Rowe seeks an injunction ordering that he be permitted to have a Celtic Cross and he will be permitted to proceed against Doris Woodruff-Filbey in her official capacity for injunctive relief on his RLUIPA claim that she denied him a Celtic Cross necklace.

XII.

In his eighth claim, Mr. Rowe alleges that Evelyn Ridley-Turner placed a substantial, unnecessary burden on the practice of his religion when she enforced the policy prohibiting all religious services for prisoners on administrative segregation. Attending communal religious services may not be compelled by or central to Mr. Rowe's system of religious belief, but he alleges that it is a part of his exercise of religion. That is to say that attending communal religious services is a part of the way Mr. Rowe practices and expresses his religious beliefs. Therefore, attending communal religious services is a religious exercise. Prohibiting him from participating in communal religious services while he was in segregation was directly, primarily, and fundamentally responsible for rendering that religious exercise effectively impracticable. Therefore prohibiting him from participating in communal religious services while he was in segregation was a substantial burden on his religious exercise of attending communal religious services.

Mr. Rowe argues that a Catholic priest and deacon occasionally visit the segregation cells, but that no individualized determinations are made as to whether a prisoner in segregation can participate in communal worship thereby acknowledging that a compelling governmental interest exists for this policy but disputing that it is the least restrictive means of achieving it. Mr. Rowe seeks an injunction ordering that Evelyn Ridley-Turner change the policy to permit his case to be individually reviewed to determine his eligibility to participate in communal worship while in segregation. Evelyn Ridley-Turner was the former Commissioner of the Indiana Department of Correction, and

> When a public officer is a party to an action in an official capacity and . . . otherwise ceases to hold office . . . the officer's successor is automatically substituted as a party.

FED. R. CIV. P. 25(d)(1). J. David Donahue is the current Commissioner, therefore Mr. Rowe will be permitted to proceed against him in his official capacity for injunctive relief on his RLUIPA claim that he denies him an individual review of his eligibility for communal worship while he is in segregation.

XIII.

Mr. Rowe attempts to characterize this case as a class action.

> Under Rule 23(a)(4), a class representative must fairly and adequately protect the interests of the class. A litigant may bring his own claims to federal court without counsel, but not the claims of others. This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.

*Fymbo v. State Farm*, 213 F.3d 1320, 1321 (10th Cir. 2000) (citations and quotation marks omitted). Mr. Rowe is proceeding *pro se* and cannot adequately represent a class action. Therefore class certification will be denied.

XIV.

For the foregoing reasons, the court:

(1) **DENIES** the motion for default (docket # 7);

(2) **CONSTRUES** the motion to amend (docket # 8) as a motion to withdraw jury demand;

(3) **GRANTS** the motion to withdraw jury demand (docket # 8);

(4) **DIRECTS** the clerk to substitute J. David Donahue for the defendant Evelyn Ridley-Turner;

(5) **DENIES** class certification;

(6) **GRANTS** the plaintiff leave to proceed against Sgt. Tina Hill in her official capacity for injunctive relief on his RLUIPA claim that she confiscated his religious literature;

(7) **GRANTS** the plaintiff leave to proceed against Cecil Davis in his official capacity for injunctive relief on his RLUIPA claim that he denied him visitation with Rev. Loy;

(8) **GRANTS** the plaintiff leave to proceed against Doris Woodruff-Filbey in her official capacity for injunctive relief on his RLUIPA claim that she denied him a Celtic Cross necklace;

(9) **GRANTS** the plaintiff leave to proceed against J. David Donahue in his official capacity for injunctive relief on his RLUIPA claim that he denies him an individual review of his eligibility for communal worship while he is in segregation;

(10) **DISMISSES** all other claims;

(11) **DIRECTS** the clerk to transmit the summons and USM-285's to the United States Marshals Service along with a copy of this order and a copy of the complaint;

(12) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Sgt. Tina Hill, Cecil Davis, Doris Woodruff-Filbey, and J. David Donahue ; and

(13) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Sgt. Tina Hill, Cecil Davis, Doris Woodruff-Filbey, and J. David Donahue respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which Jeffrey A. Rowe has been granted leave to proceed in this screening order.

**IT IS SO ORDERED.**

**ENTERED: June 16 , 2005**

**S/ ALLEN SHARP**
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**